**BCS**

**BUCHANAN CLARKE SCHLADER LLP**
certified public accountants

ATLANTA    DALLAS    HOUSTON    INDIANAPOLIS
KANSAS CITY    MIAMI    NEW YORK    ORANGE COUNTY    ORLANDO

Kenneth Brown
John Buchanan
Jay Cardarette
Michael Clarke
Diana Ebling
Suzanne Francisco
Ashley Hansen
Kurt Harms
Peter Jones
Steven Meils
David Schlader

September 17, 2015

Stephen G. Layman, Esquire
Richards and Connor PLLP
525 South Main Street
12th Floor
Tulsa, Oklahoma 74103-5409

Re:   Kidzone Learning Center, Inc. v Capitol Indemnity Corporation and Aspen Roofing and Exteriors, L.L.C.
      Dates of Loss:          May 29, 2012, March 30, 2013 and May 30, 2013
      Our File Number:        83370

Dear Mr. Layman

I have been asked to evaluate the loss of business income for Kidzone Learning Center, Incorporated (herein Kidzone) due to the storms that allegedly caused water damage to the building Kidzone occupied at 5408 S. Pennsylvania, Oklahoma City, Oklahoma. I have relied upon the following documents provided to me with regard to the financial operations and damages sought by Kidzone;

Oral deposition of Patricia G. Means dated August 12, 2015.
Plaintiff's First Amended Complaint.
Expert Report of William M. Clark, Ph. D dated September 1, 2015.
Monthly Provider Activity detail report inquiry for January 2013.
Weekly Income Recap of South Location for the period of March 17, 2013 through June 15, 2013, this included the Supporting Provider Payment Inquire Details were provided for each week included on the recap spreadsheet, except for June 2-8, 2013.
Kidzone's U.S. Income Tax Return for an S Corporation for the years ended 2010, 2011, 2012 and 2013.
U.S. Individual Income Tax Return for Patricia Means form 1040 for the year ended December 31, 2012.
Kidzone Learning Center statements of expenses, deposits and profit on a monthly basis for January 2012 through June 2013.
Letter dated August 6, 2012 from the Oklahoma Department of Human Services, Child Care Services informing Patricia Means, Owner of Kidzone Learning Center that a reduction in the star status was warranted from 3 to 1, effective as of the date of receipt of letter.
Child Care Provider Rate Schedule – Appendix C-4-B dated 11/1/2013.

Based upon my independent analysis of the documents provided to me, I conclude that Kidzone did not suffer a business income loss due to the closing of the 5408 S. Pennsylvania, Oklahoma


City location (herein Penn location). Based upon the August 6, 2012 letter from the Oklahoma Department of Human Services Kidzone's star status was reduced from a 3 to a 1. This impacted the learnings centers ability to maintain its census, reduced its reimbursement rate / child, add new children, which resulted in a reduction in revenue, before the March 30, 2013 storm. I compared the revenue beginning in September 2012 (the month after Kidzone status was reduced from a 3 to 1), through March 30, 2013, which averaged $63,650 to the average revenue after March 30, 2013 through the remainder of the year, which averaged $64,265. Thus no reduction in revenue appears to have been realized as a result of the shutdown at the Penn location. Should additional information be provided that would indicate that revenue was lost at the Penn location, an analysis of the operating expenses, such as food and wages would need to be conducted to see if this location was profitable. Day care facilities have to maintain a certain level of staff-child ratio. If this location did not have the census to be profitable then it is most likely that a business income loss would not have been realized. In other words, if the Penn location was not generating a profit before the loss event, and it could not increase its census due to the 1 Star Status, it is likely that the closing of this location was inventible. The number of months in the period of restoration should be based upon the number of months it would have taken to make the necessary repairs to the facility. I defer to other experts to estimate the period of time it would have taken Kidzone to make the necessary repairs, should it be necessary to revise my analysis. My analysis is subject to change upon the receipt of information and documents deemed necessary to evaluate the loss value and claim. I have requested additional documents and information from counsel in order to perform this analysis. I understand my request was extended to the Plaintiff's attorneys.

## Analysis

Based upon the testimony of Ms. Patricia Means, Owner of Kidzone facilities, the Kidzone federal tax return is consolidated for both locations, the facility at 5408 S. Pennsylvania, Oklahoma City, Oklahoma and the 4311 N.W. 10th Street, Oklahoma City, Oklahoma location. I relied upon the 2012 and 2013 U.S. Income Tax Return for an S Corporation (herein Corporate return) which include the revenue and expense earned for both facilities to determine if the monthly revenue, expense and profit statements are reliable. The revenue on the 2012 Corporate return equates to $1,018,275, which is the same total on the 2012 revenue on the monthly revenue, expense and profit statements, as shown on Exhibit A. Accordingly, relying on the tax return as a document provided to a third party to assert the financial position of a company provides assurance as to the accuracy of the revenue stated on the monthly statements. These monthly statements are used in my analysis to evaluate the projected and actual pre and post revenue values, as discussed later in this report.

On Page 49 of the oral deposition testimony of Ms. Patricia Means she discusses the reduction of the Kidzone "Star Status" of its facility in 2012 from level 3 to level 2. The reduction in Star Status as provided in a letter dated August 6, 2012 from the Oklahoma Department of Human Services, Child Care Services informing Patricia Means, Owner of Kidzone Learning Center that a reduction in the Star Status was warranted from 3 to 1, effective as of the date of receipt of letter, which is provided in Exhibit B of this report. This letter contradicts Mr. Means' testimony that the facilities reduction in "Star Status" was reduced from a 3 to a 2. The reduction of the "Star Status" reduces the reimbursement rate of currently enrolled children and eliminates the approval to enroll any new state funded children. Thus upon receiving the reduction in Status,



Kidzone lost its ability to add new students as old students left. This status is also used by parents in evaluating where to place their children. A reduction from status 3 to 1 would alert parents that Kidzone had serious non-compliance with licensing requirements.

As a result of the reduction is Star Status, I evaluated the revenue prior to and subsequent to the receipt of the letter and also to the revenue after the loss event. My analysis is provided on Exhibit C of this report. Revenue in the months of January to August 2012 totaled $746,501 which equates to a monthly average of $93,313. Beginning in September 2012 through March 2013 revenue totals $444,552, which yields a monthly average of $63,507. Thus prior to the loss event and after the notification of the change in Star Status, the most recent monthly average revenue earned is $63,507. Subsequent to the March 30, 2013 storm the average revenue in 2013 is $64,266 (tax return total revenue of $751,164 less revenue for January – March 2013 of $172,779 = $578,385 / 9 months). It would appear that the closing of the Penn location did not impact the ability for Kidzone to continue its pre loss revenue stream. Although the information with regard to the census of the facilities has not been provided to date, it appears children who were cared for at the Penn location could have been transferred to the 10th Street location. If this assumption is correct, the closure of the Penn location did not impact the ability of Kidzone to enjoy the same revenue stream after the loss as it enjoyed before the loss event, thus there is no actual loss of business income sustained.

I have requested documents that provide the monthly revenue and expenses for Kidzone location in order to perform additional analysis, should it be necessary. I want to evaluate the revenue earned was well as the operating expenses. If my analysis concludes that the expenses are greater than the revenue then that location is operating at a loss and I would opine that no business income loss had been realized. The inability to add new state funded children would have an impact on its revenue stream currently and in the future. If revenue could not be increased to meet the payroll and operating costs then any future profit would be in question. If the Penn location was operating at a profit following the receipt of the change in Star Status, I would compare the average monthly net operating profit from September 2012 through March 30, 2013 to the monthly post loss net profit or loss. The difference would be the potential business income loss. I have asked counsel to obtain the documents necessary to perform this analysis.

### Criticisms of Expert Report of William M Clark

Dr. Clark utilizes the average income (revenue) of April to December 2012 of $83,789.44 for the basis of his forecast. This average does not represent the monthly revenue that was being experienced before the date of loss as a result of the change in Star Status. As mentioned in my analysis above the average revenue before the loss and after the receipt of the Star Status letter (September 2012 to March 2013) was $63,507. This represents the most recent revenue stream after the Star Status letter was received. Utilizing Dr. Clarks' pre loss average revenue value overstates business income loss value and it should not be used or relied upon. Dr. Clark makes no reference to the reduction in revenue experienced by the facility prior to the loss event, and he should have. Comparing the most recent average revenue achieved before the loss event and after the receipt of the Star Status ($63,507) to the revenue achieved after the event, which as provided in Dr. Clarks report of $64,266, would confirm that there is no actual loss of revenue sustained post loss.


Dr. Clark loss determination is extended by useful work life of Ms. Means. This assumption is also flawed as the measurement of loss should be based upon the period of time it would take to make the repairs to the building. Had Kidzone made the necessary repairs to reduce the damage, it may not have been necessary to close the facility. Additionally, if the repairs are ultimately made and the facility re-opens, then the period of loss would be reduced accordingly.

### Witness Qualifications

I am a partner with Buchanan Clarke Schlader, LLP (a national Certified Public Accounting firm), which specializes in Forensic Accounting Services. I hold a Bachelors' degree in Business Administration, with a specialization in Accounting. I am a Certified Public Accountant in the states of New Jersey and Texas, and I am a member of the American Institute of Certified Public Accountants, the New Jersey Society of Certified Public Accountants and the Texas Society of Certified Public Accountants. A copy of my curriculum vitae is attached to this report. I have not published any articles in the past 10 years. I am compensated at an hourly rate of $250. Attached are a copy of my curriculum vitae (Exhibit D) and the list of cases in which I have provided testimony in the last four years (Exhibit E).

The purpose of the above report is to evaluate the above-captioned matter and to state my findings and opinions thereon. My analysis was limited to the scope of work outlined by you and to the available books, records and information that I considered pertinent and necessary to evaluate. Use of this report is strictly limited to you and your principals involved in the above-captioned matter. The above comments and attached exhibits relate to the extent of my work and the results of the analysis performed to-date. I base my opinions on the analysis performed on the financial and operating information and normal accounting standards. I further base my opinion on my education, experience in accounting and the accounting functions performed during my analysis. I reserve the right to supplement this report as necessary based upon the receipt of additional accounting and operating information.

Very truly yours,

**Buchanan Clarke Schlader LLP**
Certified Public Accountants

*[signature]*

Kurt E. Harms

Kidzone Learning Center, Inc v. Capital Indemnity and Aspen Roofing         Exhibit A
Date of Loss: March 30, 2013

**Analysis of Revenue Reported on Federal Income Tax Return Form 1120**
**and Revenue Report on the Monthly Revenue, Expense and Profit Report**

| | |
|---|---:|
| Federal Income tax return revenue form 1120S - 2012 | $1,018,275 |
| Statement of revenue, expenses and profit - 2012 | |
| January | $71,096 |
| February | 98,947 |
| March | 93,856 |
| April | 92,110 |
| May | 84,945 |
| June | 89,283 |
| July | 120,308 |
| August | 95,956 |
| September | 65,091 |
| October | 78,163 |
| November | 65,963 |
| December | 62,556 |
| Total | $1,018,274 |

Exhibit B




**Oklahoma Department of Human Services**
**Child Care Services**
PO Box 25352, Oklahoma City, OK 73125

(405) 521-3561   Toll-Free: (800) 347-2276
Fax: (405) 522-2564
www.okdhs.org/childcare

August 6, 2012

KIDZONE LEARNING CENTER          K830023550
PATRICIA MEANS, OWNER            5408 S PENN, OKC
4113 NW 10TH
OKC, OK  73107

Dear PATRICIA MEANS, OWNER:

This letter is to notify you that a reduction in your star status is warranted from 3 to 1 for the following reason(s):  Your facility has serious non-compliance with Licensing requirements (OAC 340:110-3-1) and therefore is in violation of Differential Quality Rating Policy OAC 340:110-1-8.3(b) and 8.4.  Specifically, the following serious non-compliance(s) and serious substantiated complaints have been documented at your facility in the past 24 months:

09/10/10  Monitoring visit:  OAC 340:110-3-Section 11(c)(4) Exits
09/21/10  Monitoring visit:  OAC 340:110-3-Section 11(c)(1) Physical Facilities--
           Temperature AND Section 11(c)(4) Exits
12/13/10  Monitoring visit:  OAC 340:110-3-Section 7.1(b) Criminal History Investigations,
           Section 9.1(e) Staff-Child Ratios AND
           Section 29(b) Transportation--Driver qualifications
03/11/11  Monitoring visit:  OAC 340:110-3-Section 7.1(b) Criminal History Investigations
           AND Section 9.1(e) Staff Child Ratios
07/11/11  Monitoring visit:  OAC 340:110-3-Section 11(c)(1) Physical Facilities--
           Temperature AND Section 26 Behavior and Guidance--
           Restrictions
10/31/11  Monitoring visit:  OAC 340:110-3-Section 11(c)(1) Physical Facilities--
           Temperature
03/29/12  Substantiated complaint:  OAC 340:110-3-Section 26 Behavior and Guidance--
           Restrictions
04/18/12  Monitoring visit:  OAC 340:110-3-Section 9.1(e) Staff-Child Ratios
06/06/12  Monitoring visit:  OAC 340:110-3-Section 29(b) Transportation--Driver
           qualifications
06/14/12  Monitoring visit:  OAC 340: 110-3-Section 9.1(e) Staff child ratios AND
           Section 22 Outdoor Safety and Play Equipment
06/19/12  Monitoring visit:  OAC 340:110-3-Section 7.1(b) Criminal History Investigations
07/18/12  Monitoring visit:  OAC 340:110-3-Section 7.1(b) Criminal History Investigations

You have the right to request an administrative review of this decision.  The purpose of the administrative review is to determine if the reduction of the Star certification level is in accordance with OKDHS policy and whether or not the reduction is substantially supported by the evidence.  If you choose not to oppose the reduction, your star status will be

reduced from 3 star to 1 star effective date of receipt of this letter. In order to receive an administrative review, you must submit a request in writing within 15 calendar days of receipt of this letter. Your request must include written documentation stating your grounds for appeal and should be mailed to:

    Oklahoma Department of Human Services
    Child Care Services    Attn: OCCS Director
    P.O. Box 25352
    Oklahoma City, OK 73125

If you request an administrative review, you will be notified of the date and location of the review within 30 calendar days of receipt of your request. If the decision of the administrative review is to uphold OKDHS and you participate in the OKDHS child care subsidy program, the reimbursement rate for currently enrolled children will be decreased four months from the first day of the month after you receive this letter. Also, as a one star facility, you will no longer be approved to enroll new subsidy children.

We regret this action was necessary and hope that you will correct the violations and seek to regain your star status. If you have any questions or need assistance at any time, please call me at 405-521-3561.

Sincerely,

*[signature]*

QRIS Program Manager
C:    facility owner(s) Amanda Shilling, Same address as above
      Statewide Licensing Coordinator
      OCCS Director
      Legal Division
      Licensing worker Jeanene Spradlin
      Stars Outreach Specialist M.Newton

Kidzone Learning Center, Inc v. Capital Indemnity and Aspen Roofing     Exhibit C
Date of Loss: March 30, 2013

## Analysis of Revenue
### Based upon the Monthly Revenue, Expense and Profit Reports

Revenue by Month - prior to reduction of Star Status

| | | |
|---|---|---:|
| January | 2012 | $71,096 |
| February | | 98,947 |
| March | | 93,856 |
| April | | 92,110 |
| May | | 84,945 |
| June | | 89,283 |
| July | | 120,308 |
| August | | 95,956 |

Total   $746,501

Monthly average   $93,313

Revenue by month after receipt of Star Status letter

| | | |
|---|---|---:|
| September | 2012 | $65,091 |
| October | | 78,163 |
| November | | 65,963 |
| December | | 62,556 |
| January | 2013 | 69,023 |
| February | | 56,498 |
| March | | 47,258 |

Total   $444,552

Monthly average   $63,507

Reveneu by month after loss event (March 30, 2013)

| | | |
|---|---|---:|
| April | 2013 | $79,349 |
| May | | 64,171 |
| June | | 47,747 |
| July - December (A) | | 387,123 |

Total   $578,390

Monthly average   $64,266

(A) Monthly reports not provided

| | | | |
|---|---|---:|---:|
| Revenue reported on tax return 2013 | | $751,169 | |
| Less: | | | |
| January | 2013 | 69,023 | |
| February | | 56,498 | |
| March | | 47,258 | |
| April | | 79,349 | |
| May | | 64,171 | |
| June | | 47,747 | |
| Total January - June 2013 | | 364,046 | |
| July - December | | $387,123 | |

Exhibit D

I have testified or given depositions in the following matters in the last four years.

    a. Dow Chemical Company v. Worldwide Oilfield Machine Inc., et al v. Southwest Stainless, L.P. et al (January 27, 2011) (Defendant) (Deposition) Scott Kinzel
    b. Sava Senior Care LLC et al v. RSUI Indemnity Co (September 16, 2011) (Deposition) (Defendant) Stephen Wedemeyer
    c. Tri-Tech Electric, Inc. v. Oklahoma Gas and Electric Company (November 3, 2011) (Deposition) (Plaintiff) Cary Dooley
    d. Heritage Consolidated, LLC, et al v. Apollo Wireline; In The United States Bankruptcy Court for the Northern District of Texas Dallas Division, Judge Hale (February 14 and 15, 2012) (Trail testimony) (Defendant) Miller Law Group and Rahkee Patel
    e. Omkar Group Seabrook LP dba Springhill Suites Seabrook vs. Suncoast Plumbing Co Inc (February 24, 2012)(Deposition)(Plaintiff) Mr. Chad Gauntt – Gaunrr, Earl & Binney LLP
    f. Brookstone Associates, LTD./BEI-SPVEF, LP and Hampton Apartments v. Chubb Custom Insurance Company (May 10, 2012) (Deposition)(Defendant) Jennifer Martin – Schell Cooley LLP.
    g. Chaparral Energy, LLC v. JNB Trucking LLC (January 16, 2013) (Trial Testimony) (Defendant) Oklahoma City Federal Court – Judge Russell.  Brent Olsson – Helms & Green LLC
    h. Century Surety Company v. Shayona Investment, LLC (March 23, 2015) (Trial Testimony) (Plaintiff) Oklahoma City Federal Court – Judge Cauthron.  Phil Richards – Richards & Connor LLC

Exhibit E



| | | | |
|---|---|---|---|
| ATLANTA | DALLAS | HOUSTON | INDIANAPOLIS |
| KANSAS CITY | NEW YORK | ORANGE COUNTY | ORLANDO |

Kenneth Brown
John Buchanan
Jay Cardarette
Michael Clarke
Diana Ebling
Suzanne Francisco
Ashley Hansen
Kurt Harms
Peter Jones
Steven Meils
Paul Morris
David Schlader

# Kurt E. Harms

**Summary of qualifications**

- Professional accountant since 1985. Domestic and international experience in the field of forensic accounting and investigative auditing. Consultation and expertise in the measurement of economic damages in both property and liability insurance claims as well as commercial litigation.
- Significant experience attained in the measurement of financial damages concerning business operations throughout the world.
- Expert testimony experience in deposition and at trial.
- Clients include law firms, corporations, sole proprietorships, partnerships and major commercial and casualty insurance companies.
- Fraud detection training obtained from the United States Treasury Department. Experience in detection of tax avoidance, corporate employee fidelity and embezzlement.

**Professional experience**

January 1999 onwards
Partner

Buchanan Clarke Schlader, LLP
Dallas, Texas

September 1990 to
December 1998
Manager

Campos & Stratis, LLP
Dallas, Texas

- Worked on numerous commercial, petrochemical and industrial insurance losses both domestically and internationally.
- Attained forensic, auditing and accounting skills during progression from hire date to present.
- Significant experience in measuring manufacturing, medical, assisted living, nursing homes, medicine and food preparation losses involving business interruption and extra expense.
- Assisted general adjusters, engineers and contractors in determining methods to mitigate business interruption losses.
- Performed various physical inventory counts and valuations of both in site and out of site inventory losses for raw materials, work in process and finished goods.
- Provided attorneys and adjusters assistance in construction defect, soft cost, loss of use and occupancy loss cases involving properties to include apartments, condominiums, office building and residential communities.



BUCHANAN CLARKE SCHLADER LLP

| | |
|---|---|
| 1985 – 1990 | Internal Revenue Service |
| Revenue Agent | Newark, New Jersey |

Audited Federal Income tax returns of corporations, partnerships and individuals to ascertain their correct federal tax liability and compliance with tax laws. Assisted Criminal Investigations Division and District Council in investigating and testifying on criminal tax matters. Developed an expertise of income tax laws, audit skills, effective interviewing techniques, fraud detection, and indirect methods of verifying the accuracy of books and records. Applied accounting and auditing techniques in re-construction and corroboration of taxpayer financial statements, tax returns and documents. Instructor of computer classes and revenue training.

**Education and qualifications**

| | |
|---|---|
| 1982 – 1987 | Glassboro State College |
| | Glassboro, New Jersey |

Bachelor of Science—Business Administration
Concentration in Accounting

**Certified Public Accountant**
- Texas 1991, Certificate Number 56179
- New Jersey 1991, Certificate Number 19687

**Additional professional activities**

Provided seminars to insurance personnel and professionals with in the insurance industry. Topics have included basic and intermediate business interruption measurements, and inventory losses. Seminars also given to the Texas Arson Society and various other professional groups.

**Summary of experience**

Petrochemical industries, energy, telecommunications, manufacturing, retail, banking and financial institutions, real estate, technology, semiconductor and computer industries, restaurants and food distribution, food manufacturing, healthcare, hospitals, senior care, apartment complex, automotive dealerships, airline industry, governmental accounting, hotel and hospitality, insurance brokerage, professional practices, product liability, clothing and fashion.

**Professional affiliations**
- American Institute of Certified Public Accountants
- Texas Society of Certified Public Accountants
- New Jersey Society of Certified Public Accountants